UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM TRIER et al.,

        Plaintiffs,

v.

GENESEE COUNTY et al.,

        Defendants.
_____/

CASE NO. 2:17-CV-10236
HON. GEORGE CARAM STEEH

**ORDER GRANTING PLAINTIFFS' MOTION TO AMEND COMPLAINT (Doc. 26) AND DENYING DEFENDANTS' MOTION REQUESTING THAT THIS COURT ENTER AN ORDER REQUIRING PLAINTIFFS TO COMPLETE AND FILE A CIVIL RICO CASE STATEMENT (Doc. 20)**

# I. INTRODUCTION

Plaintiffs are Genesee County process servers who claim that defendants Genesee County, Sheriff Robert Pickell, Scott Hope, Charissa Hope, and Allen & Hope Process Serving Management Co. Inc. extorted them in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. § 1961 *et seq.* Plaintiffs also claim that their First Amendment rights were violated under 42 U.S.C. § 1983 when Defendants allegedly refused to deputize Plaintiffs in retaliation for their support of Pickell's political opponent.

This matter comes before the court on two motions: first, Plaintiffs' Motion to Amend the Complaint (Doc. 26) and second, Defendants' Motion Requesting that this Court Enter an Order Requiring Plaintiffs to Complete and File a Civil RICO Case Statement. (Doc. 20). This matter is decided without a hearing pursuant to Local Rule 7.1(f)(2). For the reasons stated below, Plaintiffs' Motion to Amend the Complaint is GRANTED and Defendants' Motion Requesting that this Court Enter an Order Requiring Plaintiffs to Complete and File a Civil RICO Case Statement is DENIED.

## II. BACKGROUND

Because the court is addressing a motion to amend, the court must accept the allegations of the complaint as true. Accordingly, the facts summarized here are those alleged in the Second Amended Complaint.

Plaintiffs allege that from 2006 to December of 2016, Plaintiffs were deputized by defendant Sheriff Pickell to act as agents of the Genesee County Sheriff's Department, which would allow Plaintiffs to be paid for work received from the Genesee courts. (Doc. 26 at 4). Plaintiffs allege that Pickell charged each Plaintiff between $65.00 and $300.00 per year in exchange for being deputized and that the checks were made payable to either Pickell, Scott Hope, Charissa Hope, Pickell's secretary, the Committee to Retain Sheriff Pickell, or to a charity selected by Defendants.

(Doc. 26-3 at 6). Plaintiffs further allege that Scott Hope, acting as Pickell's agent, endorsed the checks and deposited them for the personal financial gain of Defendants. *Id.*

On April 11, 2017, the parties discussed a proposed civil RICO case statement and a possible settlement agreement where Defendants "advised Plaintiffs that the case could only be settled if all of the other process servers with possible claims gave Defendant, Pickell and Genesee County an indication of whether they intended on filing claims in the future." (Doc. 26 at 5; *see also* Doc. 20 at 3; *see also* Doc. 23 at 3). The parties did not agree on the motion, so on April 12, 2017, Defendants filed a Motion Requesting that this Court Enter an Order Requiring Plaintiffs to Complete and File a Civil RICO Case Statement, which this court has considered.

On April 19, 2017, Pickell sent a message to additional process servers who had possible claims against him and asked them if they intended to file a lawsuit. (*See* Doc. 26-2 at 2). As a result of Pickell's letter, six additional process servers retained Plaintiffs' counsel. (Doc. 26 at 5). On May 12, 2017, Plaintiffs filed a Motion to Amend the Complaint, which this court has considered. The Motion to Amend seeks to add six process servers as plaintiffs and to add Charissa Hope as a defendant. (Doc. 26 at

5). Plaintiffs also request to further "clarify its pleadings regarding their RICO claim to address Defendants' concerns." (Doc. 23 at 3).

**III. LEGAL STANDARD**

The standard for granting leave to amend is set forth at Federal Rule of Civil Procedure 15(a), which provides that courts "should freely give leave [to amend] when justice so requires." The Supreme Court has explained that courts may deny leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and/or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The standard for determining futility is whether the amendment could withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' complaint must allege sufficient factual allegations to make their alleged legal conclusions plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must assume

"that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

## IV. ANALYSIS

### A. Plaintiffs' Motion to Amend the Complaint

Plaintiffs seek leave to file a second amended complaint to: (1) add six process servers as plaintiffs; (2) add Charissa Hope as a defendant; and (3) to clarify the RICO allegations. (Doc. 26 at 5). On May 25, 2017, Defendants filed a response to Plaintiffs' Motion to Amend where Defendants opposed Plaintiffs' Motion to Amend. Defendants argue that "Plaintiff's proposed Second Amended Complaint lacks sufficient information regarding exactly how Defendants Hope and the proposed new Defendant Charissa Hope are liable under RICO." (Doc. 28 at 2). Here, Defendants appear to argue that the Proposed Second Amended Complaint should be denied due to futility of amendment.

Defendants further argue that granting Plaintiffs' motion to amend would result in "numerous amendments of the pleadings and greatly increase the cost of litigation to Defendants Hope. This is simply unfair." (Doc. 28 at 2). Here, Defendants appear to argue that the Proposed Second Amended Complaint should be denied due to undue prejudice. Essentially, Defendants make vague and unspecific objections to Plaintiffs'

Motion to Amend, which fail to demonstrate that the amendment would be futile or would result in undue prejudice to them. The court finds that Plaintiffs' RICO claims and all proposed amendments survive a motion to dismiss.

**1. Futility of Amendment**

To determine whether an amendment would be futile, the court evaluates whether Plaintiffs' allegations against Defendants are sufficient to state a plausible claim under any of the statutes or common law claims pled in the original complaint. In doing so, the court must ignore legal conclusions and accept all allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court considers whether a plausible RICO claim may lie against Defendants based on the allegations in the motion to amend, and finds that it does. A violation of § 1962(c) requires Plaintiffs to prove the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985). Plaintiffs' general factual allegations, taken as true, provide sufficient facts for this court to draw the reasonable inference that Defendants are liable for the alleged violation of § 1962(c). (*See* Doc. 26-3 at 5-9). In particular, Plaintiffs' Second Amended Complaint specifically

alleges that Defendants violated each element of § 1962(c). *Id.* at 9. The court considers each element of § 1962(c) below.

**a. Enterprise**

A RICO enterprise requires a "'structure,' but 'an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages' [is not required]." *Scharnitzke v. Sedgwick Claims Mgmt. Servs.*, No. 09-11529, 2010 U.S. Dist. LEXIS 22792, at *84 (E.D. Mich. Mar. 11, 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 941 (2009)). "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.

Plaintiffs allege that Defendants formed an enterprise that had a common purpose of engaging in the alleged misconduct of exchanging deputization for money. (Doc. 26-3 at 9-10). Plaintiffs further allege that "there were relationships among those associated with the enterprise" and "there was longevity as the relationships between the members of the Enterprise began in 2006 at the latest and continued up until at least year 2016." *Id.* at 10. Therefore, Plaintiffs' Second Amended Complaint alleges sufficient factual allegations to support the enterprise element. *Id.* at 9-10.

**b. Conduct**

The conduct element of § 1962(c) requires one to "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Plaintiffs claim that:

> Defendants participated in the "operation or management" of the Enterprise's affairs. Pickell was the central figure in the association in fact who demanded payment of monies from Plaintiffs in order to have deputization duties. Hope acted as Pickell's appointed agent and representative, and endorsed the checks and deposited them into a bank account for the personal financial gain/benefit of Defendants. In exchange for Defendant Hope's patronage and illegal activities, Defendant Pickell rewarded Defendant Hope by awarding his company Allen & Hope Inc. the exclusive rights to all process serving activities for Defendant, Genesee County and termination Plaintiffs. Defendant, C. Hope working with co-Defendants planned and devised the method to extort Plaintiffs and assisted and managed the affairs of the enterprise with Co-Defendants by determining and implementing schemes to increase revenues for Allen and Hope. These acts were condoned by Genesee County which had the custom, practice, and policy to take money not due the County by virtue of Defendant Pickell's influence and political office.

(Doc. 26-3 at 10).

The Second Amended Complaint sufficiently describes how the proposed defendant C. Hope and others engaged in misconduct violating § 1962(c). The court finds that the factual context created by these specific allegations together with the general factual allegations constitutes sufficient support for the conduct element.

**c. Pattern of Racketeering Activity**

A pattern of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). As to the question of activity, first, Plaintiffs allege that Defendants engaged in extortion under color of official right through Pickell's office in Genesee County. (Doc. 26-3 at 11). Second, Plaintiffs allege that Defendants:

> engaged in predicate acts of extortion in violation of federal law, as Defendant Pickell, as aided and abetted by Hope, C. Hope and Allen & Hope, obtained property from Plaintiffs, i.e., payments of for [sic] $65.00 to $150.00 a year, with their consent, wrongfully induced under fear of economic harm, all in violation of 18 U.S.C. § 1951, as Plaintiffs were told that if they did not make the payments, which were unlawful and not required under law, they would not be selected to provide paid deputization duties, all in violation of 18 U.S.C. § 1951.

*Id.* at 11-12.

The court finds that these factual allegations, taken as true, are sufficient to support a plausible claim. In regards to the pattern of racketeering, Plaintiffs allege that Defendants engaged in exchanging deputization for money from December 2006 until December 2016. (Doc. 26-3 at 12). Plaintiffs allege both the "continuity" and "relatedness" prongs of the pattern of racketeering activity element. *Id.* at 13. As to relatedness:

> [h]ere, the acts of extortion were related to the affairs of the Enterprise as the Defendants worked together so that Defendant Pickell could obtain something of value, i.e., the annual payments from Plaintiffs, to which he had no official

right, and in return Defendant Pickell would reward deputization designations to the Plaintiffs. Defendants Hope, C. Hope, and Hope's company Allen & Hope aided and abetted Defendant Pickell in return for obtaining exclusive rights to process-serving activities in Genesee County.

(Doc. 26-3 at 13).

Plaintiffs satisfy the "relatedness" prong because they essentially allege that Defendants engaged in "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 230 (1989) (quoting 18 U.S.C. § 3575(e)).

In regards to continuity, Plaintiffs allege:

Plaintiffs alleges [sic] that the pattern of racketeering activity constituted close-ended continuity as these were continuous acts occurring over a substantial period of time, i.e., at least eleven (11) years. Plaintiffs alleges [sic] that the pattern of racketeering activity constituted "open-ended" continuity based upon a threat of continuing racketeering activity because the predicate activity constituted the regular way Defendants did business. Because such criminal conduct was part of the regular way Pickell, Hope, and C. Hope did business it gives rise to the inference that such offenses will continue indefinitely if not interrupted. Hope and C. Hope continue to maintain the exclusive right to process serving in the County and continue their close relationships with County officials, including Defendant Pickell.

(Doc. 26-3 at 13).

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. The court finds that Plaintiffs have sufficiently alleged the continuity prong by pleading enough to establish both closed and opened continuity. In particular, the predicate acts pleaded in the Second Amended Complaint cover an approximately eleven year period. (Doc. 26-3 at 13). Furthermore, Plaintiffs allege that the continuous acts will continue indefinitely because Defendants "continue to maintain the exclusive right to process serving in the County and continue their close relationships with County officials, including Defendant Pickell." (Doc. 26-3 at 13).

### i. Closed Continuity

"A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242. Although there is no firm rule as to what establishes a "substantial period of time," the Supreme Court has held that acts alleged to occur "only over a 'few weeks or months and threatening no future criminal conduct' do not satisfy the continuity requirement." *Id.* at 253. Here, Plaintiffs allege conduct spanning nearly

eleven years. (Doc. 26-3 at 13). Furthermore, Plaintiffs allege that Defendants purpose was to personally enrich themselves by "obtaining exclusive rights to process-serving activities in Genesee County." *Id.* The court finds that Plaintiffs' allegations, taken as true, satisfy closed continuity because they allege the necessary "long term criminal conduct" that Congress intended RICO to address. *See* 492 U.S. at 242.

### ii. Open Continuity

Open continuity may be alleged by allegations:

> that the predicates establish a *threat* of long-term racketeering activity—for example, because the predicates themselves involve a distinct threat of such activity; because they are part of the regular way of doing business for an ongoing entity such as a criminal association or legitimate business; or because they are a regular means of conducting or participating in an ongoing RICO enterprise.

*Id.* at 230.

Plaintiffs argue that open continuity stands:

> based upon a threat of continuing racketeering activity because the predicate activity constituted the regular way Defendants did business. Because such criminal conduct was part of the regular way Pickell, Hope, and C. Hope did business it gives rise to the inference that such offenses will continue indefinitely if not interrupted. Hope and C. Hope continue to maintain the exclusive right to process serving in the County and continue their close relationships with County officials, including Defendant Pickell.

(Doc. 26-3 at 13).

Here, Plaintiffs sufficiently allege that absent intervention, there is a risk of continued racketeering. Furthermore, Plaintiffs allege that the conduct of Pickell, Hope, and C. Hope was a regular way of conducting their ongoing business, Allen & Hope Process Serving Management Co., Inc. Moreover, Plaintiffs obtained letters signed by Pickell that read in part:

> [e]ffective January 1, 2017, the Office of Genesee County Sheriff will exclusively use the firm of Allen-Hope & Associates to serve orders for seizure, evictions, claims and delivery, and foreclosures… [i]f you fail to complete orders for seizure, evictions, or claims and foreclosures by December 31, 2016 at midnight, you are expected to contact Scott Hope.

(Doc. 4-2 at 2).

Per the Second Amended Complaint, there are twelve Genesee County process servers who have been victims of Defendants' alleged scheme to deputize the process servers in exchange for money and conferring on defendant Scott Hope the exclusive rights to process serving. (Doc. 26 at 3-5). Furthermore, the letters allegedly signed by Pickell provide another reason for this court to draw the reasonable inference that Defendants are liable for the alleged misconduct. Taken as true, Plaintiffs' allegations support the existence of open continuity. Plaintiffs have pled sufficient facts in support of their civil RICO claim to survive a motion to dismiss. Accordingly, amendment would not be "futile."

## 2. Undue Prejudice

Having found that amendment would not be "futile," the court turns to the second question: whether amendment would unduly prejudice the defendants. Undue prejudice is often found when the delay in amending the pleadings is unexplained, unjustified, and the case has already reached an advanced stage of litigation. *See, e.g.*, *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 307 (6th Cir. 2008) (affirming district court's refusal to allow plaintiff to amend his complaint after his properly pleaded claims were dismissed at summary judgment); *Duboc v. Green Oak Twp.*, 312 F.3d 736, 752-53 (6th Cir. 2002) (affirming district court's refusal to allow plaintiff to file a second amended complaint after the case was trial ready as an eleventh hour amendment would prejudice the defendant). None of those situations are present here. The Sixth Circuit has found prejudice to the opposing party where a defendant sought to amend its answer three years after filing its original responsive pleading, and just as its opponent "was preparing to litigate the remaining issues by motion for summary judgment." *Owens Corning v. National Union Fire Ins. Co. of Pittsburgh, PA*, 257 F.3d 484, 496-97 (6th Cir. 2001). In contrast, no undue prejudice exists from amended pleadings simply because the opposing party would have to defend against new or better pleaded claims.

The court finds Defendants' assertion that granting leave to amend would result in undue prejudice unpersuasive. There is no undue prejudice because this matter is still in its infancy, no scheduling conference has been held yet, and no scheduling order is in place. More importantly, the Proposed Second Amended Complaint seeks to add six process servers that Defendants also seek to add in order to facilitate a possible settlement. (Doc. 26 at 5). Furthermore, Plaintiffs have provided a more detailed RICO complaint by alleging violation each element of § 1962(c). Thus, there is no undue prejudice.

**B. Defendants' Motion Requesting that this Court Enter an Order Requiring Plaintiffs to Complete and File a Civil RICO Case Statement.**

Defendants have filed a Motion Requesting that this Court Enter an Order Requiring Plaintiffs to Complete and File a Civil RICO Case Statement, a form required to be filed in some jurisdictions. Defendants argue that "use of the proposed Civil RICO Case Statement would be of vital help in the instant action by, not only narrowing the issues, but also curtailing anticipated extensive motion practice directed at dismissing all or parts of Plaintiffs' Complaint." Again, the court finds these vague assertions unpersuasive. Here, there is no standing order requiring a RICO case statement, nor does this court have a local rule requiring a RICO case statement. More importantly, Plaintiffs' Second Amended Complaint pled

sufficient facts to support a plausible RICO claim and added the additional process servers that Defendants identified. The benefits of requiring preparation of a case statement can all be achieved by appropriate discovery requests. Accordingly, Defendants' Motion Requesting this Court Enter an Order Requiring Plaintiffs to Complete and File a Civil RICO Case Statement is DENIED as moot.

**V. CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion to Amend (Doc. 26) is GRANTED. Consistent with the analysis herein, Defendants' Motion Requesting this Court Enter an Order Requiring Plaintiffs to Complete and File a Civil RICO Case Statement (Doc. 26) is DENIED as moot.

**IT IS SO ORDERED.**

Dated: August 2, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 2, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk